**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In Re: ) | |
| ) | |
| ROBERT M. RENICKER and ) | Case No. 05-71905 |
| SHIRLEY A. RENICKER, ) | |
| ) | |
| Debtors. ) | |

**MEMORANDUM OPINION**

In a case filed under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the Debtors, Robert M. and Shirley A. Renicker, filed a chapter 13 plan proposing to pay what they determined to be all of their disposable income for sixty months.[1] Nothing unusual there except that the Debtors, who have a combined net income of approximately $6,085 a month, calculated their monthly disposable income to be only $20.88.

Not surprisingly, the chapter 13 trustee ("Trustee") objects to confirmation of the Debtors' plan on the grounds that the Debtors' disposable income is significantly higher than $20.88. Specifically, the Trustee argues that the Debtors are not entitled to deduct an expense for a home they no longer own and that they have claimed several expenses that are not reasonably necessary for the health and welfare of the Debtors or their dependents.

The Trustee's objections raise two BAPCPA issues of first impression for this Court. The first issue is whether historical or projected expenses should be used to calculate the amount of disposable income available to fund a plan. As indicated by the inclusion of an expense for a home they no longer own, the Debtors have based their calculation of disposable income, at least in part, on *historical* expenses. The Trustee maintains that the Debtors' *projected* expenses should be used to calculate disposable income. The Court agrees with the Trustee.

The second issue pertains to the appropriate standard for evaluating "extraordinary" expenses. Before the enactment of the BAPCPA, disposable income for all debtors was calculated by deducting from income those the expenses that were "reasonably necessary to be expended for

---

[1] The Debtors' plan actually provides that all amounts due under the plan will be paid in thirty-one months. Because the Court finds that the Debtors' plan cannot be confirmed because the Debtors have understated their disposable income, the Court does not need to address whether a plan can be completed in less than the "applicable commitment period," which for these debtors would be sixty months. 11 U.S.C. § 1324(b)(4). However, the Court does note its inclination to interpret "applicable commitment period" as a temporal requirement.

the maintenance or support of the debtor." Under BAPCPA practice, this standard is only applicable to debtors whose income is less the median income for the applicable state. For debtors whose income is above the median, like the Debtors in this case, 11 U.S.C. § 1325(b)(3) requires them to calculate their disposable income according to § 707(b)(2), a section now commonly known as the "means test." The means test calculates a debtor's disposable income in large part by reference to uniform standard expenses promulgated by the I.R.S. for use in its debt collection efforts. In calculating their disposable income, the Debtors have included several expenses in excess of the amounts allowed under the means test. They justify those expenses by claiming that they are "reasonably necessary for the welfare and support of the Debtors." The Trustee does not dispute that expenses reasonably necessary for the health and welfare of a debtor might be allowable; he merely disputes that these Debtors have failed to carry their burden of establishing the reasonable necessity of the Debtors' extraordinary expenses. As discussed below, while the Court agrees with the Trustee that the Debtors have failed to justify their extraordinary expenses, the Court reaches that conclusion for different reasons that those advocated by the Trustee.

## BACKGROUND

The Debtors filed for protection under chapter 13 of the Bankruptcy Code on October 28, 2005. Shortly before filing, Debtor Robert Renicker accepted a job in Colorado, and as of the date of filing, both Debtors had moved from Grain Valley, Missouri to Colorado Springs, Colorado.

The Debtors have provided two somewhat dissimilar reports of their financial situation, although the dissimilarity is a natural function of the form on which the information is reported and not a product of misrepresentation. On the Debtors' statements of income and expenses (Schedules I and J) required by 11 U.S.C. § 521(a)(1)(B), the Debtors list their *current* income and expenses. Schedule I shows a gross monthly income of $8,134.67 from Mr. Renicker's new employment in Colorado and Mrs. Renicker's disability insurance. Schedule J shows total monthly expenses of $4,927, with notable expenses of $1,445 for rent, $550 for transportation, and $335 for telecommunication services.[2] Debtors' counsel stated that the apparently excessive rental expense

---

[2] This figure is comprised of $55 each for telephone, internet, and cable services, and $90 for mobile phone services.

is reasonable and necessary because a large residence is required to accommodate Mr. Renicker's need to entertain his employees and business clients and to accommodate the needs of Mrs. Renicker, who suffers from multiple sclerosis. The increased transportation and telecommunications expenses are also supposedly necessary for Mr. Renicker's business. Subtracting the Debtors' Schedule J expenses from the net income listed on Schedule I ($6,085) yields an apparent disposable income of $1,158.00, although that is not the figure used to formulate the Debtors' plan. That number – $20.88 – comes from the Debtors' Official Form B22C ("Form B22C").

Form B22C calculates a debtor's income and expenses differently than Schedules I and J.[3] Income is based on the debtor's average income for the six months prior to the bankruptcy filing, and allowed expenses are generally determined by reference to the I.R.S. standards. According to the Form B22C filed by the Debtors, their gross monthly income is $7,508 and their expenses are $7,487.12, leaving disposable income of just $20.88. Although calculated differently, the Debtors' Form B22C also includes elevated housing, transportation, and telecommunications expenses. The housing expense exceeds the I.R.S. housing allowance for Colorado by $547, the transportation expense exceeds the I.R.S. local allowance for the operation of two vehicles by $268, and the telecommunication expense is listed as a separate, additional expense of $235.

## ANALYSIS

Before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a period in time many now call "the good old days," calculating a debtor's "projected disposable income" for purposes of § 1325(b)(2) generally entailed little more than a review of Schedules I and J. If a debtor accurately reported his income in Schedule I and his expenses on Schedule J were all "reasonably necessary . . . for the maintenance or support of the debtor or a dependent of the debtor,"[4] the difference was the debtor's disposable income. Whether an expense was "reasonably necessary" was a determination within the discretion of the bankruptcy judge.

Enter BAPCPA and its revisions to § 1325(b)(2) and (3). The calculation of disposable income is no longer a one-size-fits-all analysis; the variables used in the calculation of disposable

---

[3] Form B22C is required by Local Rule 1007(b)(6), which was enacted to implement the BAPCPA.

[4] 11 U.S.C. §1325(b)(2) (West 2004) (Pre-BAPCPA).

income are no longer limited to Schedules I and J; and bankruptcy judges' discretion has been significantly curtailed. Under revised § 1325(b)(1), if the trustee objects to the confirmation of a plan, as he has here, then the plan must provide that all of the debtor's "projected disposable income" to be received in the "applicable commitment period" be applied to make payments under the plan. Section 1325(b)(2) provides that disposable income is calculated by deducting the amounts reasonably necessary for the maintenance or support of the debtor or the debtor's dependents from the debtor's projected disposable income.[5] "Amounts reasonably necessary" is defined in one of two ways. For a debtor whose income is below the median family income for the applicable state, the Court retains the discretion to determine what is reasonably necessary for the maintenance or support of the debtor or the debtor's dependents.[6] However, for a debtor whose income is above the median family income for the applicable state, which is the case here, "amounts reasonably necessary" to be expended under § 1325(b)(2) is determined "in accordance with subparagraphs (A) and (B) of  section 707(b)(2),"[7] In other words, section 1325(b)(3) replaces the subjective "reasonably necessary" standard with the objective formula used to determine expenses under the means test.

As many readers now know, in chapter 7 the means test is used to determine whether a case should be dismissed as an abusive filing by measuring the debtor's ability to fund a hypothetical chapter 13 plan.[8] The hypothetical plan is crafted by deducting certain allowed expenses from the debtor's CMI. If the resultant, hypothetical disposable income exceeds the thresholds set forth in

---

[5] Determining a debtor's projected disposable income is also a somewhat complicated affair. Section 1325(b)(2) defines "disposable income" as a debtor's "current monthly income" ("CMI"). CMI is determined according to the formula set forth in 11 U.S.C. § 101(10A), which averages the debtor's income for the six months *prior* to the bankruptcy filing. Thus, the statute appears to be internally inconsistent, requiring the calculation of *projected* disposable income using *historical* income as the starting point. That inconsistency is most apparent when, as is the case here, the Debtors' current income is higher than their historical income. As discussed below, at least one court has resolved this inconsistency by concluding that projected disposable income should be calculated using "projected" income, and that there is a rebuttable presumption that a debtor's CMI equals projected income. See *In re Jass*, 2006 WL 871235 (Bankr. D. Utah 2006). In this case, the Court does not need to reach a final determination on this issue because the Court denies confirmation on other grounds.

[6] 11 U.S.C. § 1325(b)(2).

[7] 11 U.S.C. § 1325(b)(3).

[8] 11 U.S.C. § 707(b)(2).

4

§ 707(b)(2)(A)(i), then abuse is presumed.[9] For above-median debtors in chapter 13, section 1325(b)(3) strips away the language and implications dealing with abuse and § 707(b)(2)(A) is simply the means (pun intended) by which actual disposable income is calculated.

*Rear View Mirror or Crystal Ball?*

The Trustee's first objection to confirmation highlights the flip-side of the issue recently addressed in *In re Jass*.[10] In *Jass*, Judge Thurman determined that disposable income should be calculated using a debtor's projected (versus historical) income, and that while CMI, an inherently retrospective concept, is presumed to be representative of the debtor's projected income, that presumption can be rebutted by a showing that the CMI is no longer accurate.[11] Here the Court deals with a question on the other side of the equation – that is, whether to use historical or projected *expenses* to determine the amount of a debtor's disposable income that must be devoted to a chapter 13 plan. The Debtors have calculated their disposable income (on Form B22C) using at least one historical expense – the mortgage expense from their home in Grain Valley, Missouri, which they no longer own – and the Trustee argues that that is improper.[12]

The Court's task here is perhaps easier than Judge Thurman's because the calculation of projected expenses under § 707(b)(2)(A) and (B) does not directly implicate CMI, which, as noted above, is an inherently retrospective concept. Whether to use historical or prospective expenses is free from that tension. Section 1325(b)(2) states that "disposable income means current monthly income . . . less amounts reasonably "*to be expended*...for the maintenance or support of the debtor or a dependent of the debtor." And this language is repeated in § 1325(b)(3)'s directive to calculate

---

[9] Abuse will be presumed if a debtor's disposable income multiplied by 60 is "not less than the lesser of (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; (II) $10,000." 11 U.S.C. § 707(b)(2)(A)(i).

[10] *In re Jass*, 2006 WL 871235 (Bankr. D. Utah 2006).

[11] *Id.* at *5-6.

[12] Under the unique circumstances of this case, the answer to this question doesn't actually affect the outcome because the Court finds that the Debtors are not entitled to deduct anything over the I.R.S. standard housing expense, and the Debtors' historical and prospective housing expenses both exceed the I.R.S. standard; however, the issue is ripe for determination inasmuch as it will provide the Debtors (in this case and others) with necessary guidance in the event they choose to amend their plan.

the "amounts reasonably necessary *to be expended* under paragraph (2) . . . in accordance with" § 707(b)(2)(A) and (B). Thus, the plain language of § 1325(b)(2) unambiguously indicates that prospective – not historical – expenses are to be used to calculate disposable income.[13]

In Schedule J, the Debtors indicate that the amount to be expended for rent in their new home in Colorado is $1,445. However, that expense exceeds the $898 I.R.S. housing allowance, incorporated by reference in § 707(b)(2)(A)(ii)(I). So, before the Debtors' excess rental expense of $547, as well as the other expenses objected to by the Trustee, can be deducted from the Debtors' CMI, the Court must determine the appropriate standard for evaluating expenses in excess of the standard deductions in § 707(b)(2)(A), and whether the Debtors have met that standard.

*Evaluation of Extraordinary Expenses*

The Court agrees with the Trustee that the Debtors are not entitled to the extraordinary expenses claimed, but the Court disagrees with the premise argued by the Debtors and implicitly accepted by the Trustee that expenses in excess of the standard deductions in § 707(b)(2)(A) may be justified by a showing that they are reasonably necessary for the health and welfare of the Debtors or their dependents. This is not to say that expenses in excess of the I.R.S. standards may never be included in the calculation of disposable income; they may. But the Debtors and the Trustee cite the wrong standard.

For two of the expenses to which the Trustee has objected – the $547 excess rental expense and the $268 "gas" expense in excess of the I.R.S. allowance for the operation of two vehicles – the proper standard is found in § 707(b)(2)(B), the *other* subsection of § 707(b)(2) specifically referred to in § 1325(b)(2).

> Section § 707(b)(2)(B) provides in pertinent part:
>
> (B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that [sic] justify additional expenses or adjustments of

---

[13] "[W]here as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

current monthly income for which there is no reasonable alternative.

>(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--
>
>>(I) documentation for such expense or adjustment to income; and
>>
>>(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
>(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

Under § 707(b)(2)(B), which again, the Court reads as if it has been stripped of its references to the presumption of abuse language related to the means test,[14] debtors who demonstrate "special circumstances" may deduct "additional expenses . . . for which there is no reasonable alternative."[15] In order to demonstrate special circumstances, a debtor must itemize each additional expense,[16] provide "documentation" for such expense,[17] and provide "a detailed explanation of the special circumstances that make such expenses . . . necessary and reasonable."[18]

In this case, the Debtors' failure to submit any documentation in support of their extraordinary expenses relieves the Court from having to develop, possibly from whole cloth, a detailed definition of "special circumstances," or to distinguish between "reasonably necessary" and "necessary and reasonable." This lack of documentation, alone, is sufficient to deny the extraordinary expenses claimed by the Debtors. Nevertheless, the Court does note that the explanations offered by the Debtors' counsel at the hearing on the Trustee's motion fall far short of

---

[14] The stripping process is not mechanical and requires that the Court restructure the statute, but the Court does not believe that the interpretive liberties taken alter the analysis.

[15] 11 U.S.C. § 707(b)(2)(B)(i).

[16] 11 U.S.C. § 707(b)(2)(B)(ii).

[17] 11 U.S.C. § 707(b)(2)(B)(ii)(I).

[18] 11 U.S.C. § 707(b)(2)(B)(ii)(II).

establishing that special circumstances exist;[19] that there is no reasonable alternative to the extraordinary housing, transportation, and telecommunications expenses claimed; or that those expenses are necessary and reasonable.

The Debtors argue that expenses cannot be determined solely by reference to § 707 and that some vestige of the "reasonably necessary" standard remains to deal with extraordinary expenses, lest the reference to "reasonably necessary" expenses in § 1325(b)(2) be "surplus language."[20] But this argument fails to recognize that the "reasonably necessary" language and standard in § 1325(b)(2) is not surplusage because it still applies to debtors whose incomes are below the applicable median income. Moreover, the need to accommodate a debtor's extraordinary expenses – which the Court agrees is necessary – is satisfied without resorting to extra-textual arguments. In this instance, the plain language of § 1325(b)(2) and (3) and §707(b)(2)(A) and (B) yields a result that is logical, workable, and not at apparent odds with the intention of the drafters.[21]

The Debtors' $235 telecommunications expense can also be evaluated under § 707(b)(2)(B), but under the I.R.S. standards incorporated into § 707(b)(2)(A)(i), telecommunications expenses can be included in the calculation of disposable income if they are necessary and reasonable. The source of this standard is not the § 1325(b)(2) "reasonably necessary" standard, though. The "necessary" element is derived directly from the Internal Revenue Manual[22] which sets forth the definition and applicable standards for the "Other Necessary Expenses" referred to in § 707(b)(2)(A)(i),[23] and the "reasonable" element is, the Court believes, implicit in all disposable income analyses.

---

[19] The Court sympathizes with Mrs. Renicker, who suffers from a serious disease, but the Debtors have not produced any evidence directly connecting her condition with the extraordinary expenses claimed.

[20] Transcript of April 3, 2006 hearing, at p. 8-9.

[21] *See Ron Pair, supra.* Unfortunately, not every issue arising from the BAPCPA is so easily resolved by reference to the purportedly "plain" language of the statute.

[22] *Available online at*, http://www.I.R.S..gov/irm/index.html.

[23] Part V, Chapter 15, Section 1.10(1) of the Internal Revenue Manual states that "Other Expenses may be considered if they meet the necessary expense test – they must provide for the health and welfare of the taxpayer and his or her family or they must be for the production of income. This is determined based on the facts and circumstances of each case." Expenses for "Optional Telephones and Telephone Services (Cell phone, pager, Call waiting, caller identification or long distance)" are recognized as "other expenses." *Available online at*, http://www.I.R.S..gov/irm/part5/ch15s01.html#d0e175877.

The Debtors in this case, however, have not provided the Court with any documentary or testimonial evidence that any additional telecommunications expenses, let alone $235 worth of such services, are necessary. Therefore, the Court finds that the Debtors are not entitled to a $235 telecommunications expense for purposes of calculating their disposable income under § 1325(b)(2).

## CONCLUSION

Having determined that the Debtors are not entitled to deductions from their disposable income for $547 in excess of the I.R.S. allowance for Colorado housing expenses; $268 in excess of the local allowance for the operation of two vehicles; and $235 in telecommunications expenses, the Court finds that the Debtors have a disposable income of approximately $1,070.88.[24] Because the Debtors have proposed to pay only $20.88 a month into the plan as their disposable income, the Debtors' plan violates § 1325(b)(2). Therefore, the Court will deny confirmation of their plan.

A separate order consistent with the findings of fact and conclusion of law stated herein will be entered pursuant to Fed. R. Bank. P. 9021.

ENTERED this 15th day of May 2006.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Richard V. Fink
Karen S. Maxcy

---

[24] $20.88 (from the original plan) + the expenses denied herein ($547 + $268 + $235) = $1,070.88.